Plaintiff's Name _Tijne Adolphus McGhee_

Prisoner No. _1156331_

Institutional Address _MAGUIRE CORRECTIONAL_
_FACILITY 300 Bradford Street_
_Redwood City, CA. 94063_

NC

# FILED

**JUL 28 2023** *BAR*

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

_Tijne Adolphus McGhee_
*(Enter your full name)*

v.

_County of San Mateo and_
_Christina Corpus, in her official_
_capacity as Sheriff of the County_
_of San Mateo._

*(Enter the full name(s) of all defendants in this action)*

Case No. _23—01521 HSG (PR)_
*(Provided by the clerk upon filing)*

**"AMENDED COMPLAINT"**

**COMPLAINT BY A PRISONER
UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983.**

_AND RLUIPA THE RELIGIOUS_
_LAND USE AND INSTITUTIONALIZED_
_PERSONS ACT, 42 U.S.C. § 2000cc, et seq._

## I. Exhaustion of Administrative Remedies.

*You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.*

A. Place of present confinement _MAGUIRE CORRECTIONAL FACILITY_

B. Is there a grievance procedure in this institution?  ☒ **YES**   ☐ **NO**

C. If so, did you present the facts in your complaint for review through the grievance procedure?
☒ **YES**   ☐ **NO**

D. If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue any available level of appeal, explain why.

1. Informal appeal: _Not Resolved._

2. First formal level: _12-18-2022 sent grievance to shift_
_sergeant and for response about the deprivation_
_of my U.S. Mail._

3.   Second formal level: Grievance was replied to on 12-27-2022 stating all mail is sent by senders to SMART COMMUNICA-TIONS IN FLORIDA.

4.   Third formal level: For the third and final level, sent a letter to the "Watch Commander" on yellow ruled paper the date of 1-1-2023 No reply.

E.  Is the last level to which you appealed the highest level of appeal available to you?
☒ YES          ☐ NO

F.  If you did not present your claim for review through the grievance procedure, explain why.

_____

_____

_____

## II. Parties.

A.  If there are additional plaintiffs besides you, write their name(s) and present address(es).
Stephanie Krent  Knight First Amendment Institute At Columbia University
475 Riverside Drive, Suite 302  New York, NY. 10115
Cara Gagliano Electronic Frontier Foundation  815 Eddy Street San Francisco CA 94 109.

B.  For each defendant, provide full name, official position and place of employment.
County of San Mateo and Christina Corpus,
San Mateo County Sheriff's Office
330 Bradford Street
Redwood City, CA. 94063

## III. Statement of Claim.

State briefly the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

Plaintiff Tijue Adolphus McGhee Alleges As Follows: I. This is a civil rights complaint for declaratory and injunctive relief and monetary damages brought over for the "policy" of San Mateo

County and Sheriff Christina Corpus digitizing and willfully destroying United States Federal mail sent to the plaintiff inside the County's jail facilities. Depriving plaintiff of the original physical letters, cards, drawings, and conducting suspicionless, intrusive surveillance of not only the mail but that of the individual senders of that mail. On (4) four different occasions Plaintiff's mail was "destroyed" by "San Mateo County's Mail Policy". On 12/27/2022, plaintiff received mail from his mother with personal sticker tags containing name, address and Trumpet Horn/Bugle attached to a blue envelope. This piece of mail was sent on 12/19/2022. Inside was a card and letter. On the card was a drawing of the (3) three wise men and baby Jesus in a manger. The original was sent to "SMART COMMUNICATIONS" a private for-profit company in the State of Florida where the envelopes and the contents were all "destroyed"......

## IV. Relief.

Your complaint must include a request for specific relief. State briefly exactly what you want the court to do for you. Do not make legal arguments and do not cite any cases or statutes.

WHEREFORE, Plaintiff respectfully prays that this Court enter an order: "A. Issue declaratory relief that Defendants' mail policy — which includes the opening examining, digitizing physical mail and retaining mail and sender information for subsequent investigative use, and lastly destroying the

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: _____        _____
                          *Date*                                    *Signature of Plaintiff*

2. On 2/07/2023, plaintiff received mail from his mother with her personal butterfly sticker tag containing her name, address, and designed with a bass violin attached to a beige envelope. This piece of mail was sent on 2/03/2023. Inside was a card and letter with (2) two dove birds on a branch. The originals was sent to, "SMART COMMUNICATIONS" a private for-profit company in the state of Florida where the envelope and the contents were all "destroyed".

3. On 2/09/2023 Jehova's Witness Prison Ministry's wrote to plaintiff about being able to contact them for religious study materials to maintain focus on the practice and power of prayer to free myself of stress and depression plaintiff have been experiencing. Reaching out to express to plaintiff he is loved by GOD. This religious material in it's original form was sent to, "SMART COMMUNICATIONS" a private for-profit company in the state of Florida where the envelope and the contents were all "destroyed".

4. On 5/22/2023, plaintiff received mail from, "BLACKSTONE CAREER INSTITUTE" College Law School

1 in Allentown Pennsylvania. where plaintiff was planning
2 to attend while in the County jail to further
3 educate himself in law, by becoming a paralegal
4 under the "Paralegal Certificate Program"
5 provided to incarcerated people like plaintiff.
6 Plaintiff cannot receive the materials required
7 to study law at Blackstone Career Institute
8 due to the policy of San Mateo County and
9 the Sheriff's office. All the original materials
10 sent to "SMART COMMUNICATIONS" a private for-
11 profit company in the state of Florida where the
12 envelope and the contents were all destr-
13 oyed. (See Introduction Page 1 of 33)
14
15
16 IV. Cont..., REQUEST FOR RELIEF.
17
18
19 ⊙riginal physical mail – violates the First
20 Amendment to the U.S. Constitution.
21
22
23    B. Declare that Defendants' mail policy
24 violates Article 1, Section 2 of the California
25 Constitution.
26
27
28    C. Declare as applied to Plaintiff Tijue

1  Adolphus McGhee, Defendants' mail policy
2  violates the Religious Land Use and Insti-
3  tutionalized Persons Act.
4
5
6     D. Order Defendants' and their agents for
7  hire from digitizing and subsequently destro-
8  xing incoming physical mail.
9
10
11    E. Order Defendants to expunge all copies
12 of plaintiff's mail collected through Mail-
13 Guard.
14
15
16    F. Issue injunctive relief, to cease the
17 Defendants use of the "policy" that is in fact
18 in conflict with the Constitution, illegal,
19 Unlawful, and Unenforceable.
20
21
22    G. Award Plaintiff compensatory damages
23 for erecting a policy that has violated, and
24 continues to violate protected First Amendment
25 rights, which include, but are not limited to, pursu-
26 ance of institutional grievances, religious expression, and
27 familial or political association.
28

1    H. Award Plaintiff punitive damages against

2 defendants willful knowing that prisons or jails

3 "may not" adopt policies that, "intentionally or

4 not", have a "chilling effect" on protected

5 conduct. In an amount as yet to be

6 deduced from the evidence, but in no

7 event in an amount less than $1,000,

8 000.00 and,

9

10

11    I. Award Plaintiff reasonable costs

12 and attorney's fees incurred in this

13 action.

14

15

16    J. Any other relief that this Court may

17 deem just and proper.

18

19

20    K. Trial by jury is hereby demanded on

21 all claims alleged herein, and the parties

22 are hereby given notice, pursuant to Fed. R.

23 Civ. P. 38 (a) - (c).

24

25    Respectfully submitted this

26 _____.

27 _____

28 Tijue Adolphus McGhee

Page 3 of 3. (A)

# INTRODUCTION

1. San Mateo County's mail policy serves no legitimate penological purpose. The policy of San Mateo County digitizing and willfully destroying mail sent to Plaintiff inside it's jail facility depriving plaintiff of physical letters, drawings, cards, and "conducting suspicionless surveilance of not only mail but the individual senders of that mail." In 2021, San Mateo County banned plaintiff as well as others inside the County's jails from receiving any physical mail other than attorney and court communications by U.S. Mail Delivery. Under this "policy", the individual senders of U.S. mail must route all letters, cards, drawings etc., to "SMART COMMUNICATIONS", a private for-profit company stationed/headquartered in Florida, where this company scans Plaintiff's mail, destroys every piece of the originals and "stores digital copies for a minimum of seven years in the private for-profit company Smart Communications Data Base.

2. By the service provided, called MailGuard plaintiff can only access digital copies of his

1 mail only if plaintiff agrees to the Mail Guard
2 terms of use, and only by use of the
3 tablets and kiosks provided to be used in
4 public spaces on camera. The stored
5 digital copies can be accessed by the Cou-
6 nty without question or obstacle at any
7 pleasing convenience of every piece of U.S.
8 mail received courtesy of "SMART COMMUNICAT-
9 IONS".
10
11
12     3. San Mateo County's policy banning
13 U.S. postal mail and then subjecting digital
14 copies to long-term surveilance violates
15 the expressive, associational both
16 famliy wise, community wise, privacy, and the
17 religious rights of plaintiff in it's jail as
18 well, including those presumed innocent, and
19 all others who send mail to the plaintiff.
20
21
22     4. The "policy" violates the rights of
23 the plaintiff and the sender of the mail
24 to an increased and ongoing unwarranted
25 surveilance by San Mateo County and others
26 which further makes the "policy" illegal, un-
27 lawful, and unconstitutional from the ini-
28 tial birthing of the "policy" built and based

1 on deceit. Once again the "policy" serves
2 no legitimate penological purpose and
3 only undermines the community trust.
4
5
6     5. There is no justification with
7 a decision to "Ban" mail with over exagger-
8 ated concerns about "Fentanyl exposures", or
9 that "the mail is a "significant source" for
10 drugs being brought into jails of San
11 Mateo County." County officials can access
12 the additional sensitive information that
13 "SMART COMMUNICATIONS" collects from indivi-
14 duals who send mail to the County jails, "Spy-
15 ing and in breach, and abuse of the office
16 of trust they occupy". and sign up for its
17 mail tracking service. Illegal, Unlawful,
18 and Unconstitutional.
19
20
21     6. Legal injury is defined as the viol-
22 ation of a legal right for which the law
23 "provides a remedy"." Wrong, or damage done
24 to another, either in his or her person, rights,
25 reputation or property". Officials are entitled
26 to some deference in administering jails and
27 prisons, the Supreme Court has long emphas-
28 ized that judicial review of speech-restrictive

1  policies in these settings are not toothless.

2

3

4      7. Plaintiff, on the date of 12-18-2022

5  filed a grievance to the sergeant at the

6  "Maguire Correctional Facility" pertaining to the

7  impeding of his U.S. Postal mail. Plaintiff seeks

8  declaratory, injunctive, and monetary relief

9  from "San Mateo County's mail policy". As descr-

10  ibed further, San Mateo County's elimination

11  of physical U.S. mail and use of MailGuard

12  violates the First Amendment to the

13  U.S. Constitution and Article 1, Section 2

14  of the California Constitution by denying the

15  plaintiff and others the ability to use a

16  uniquely expressive medium of communication

17  by "chilling the expressive and associational

18  activity".

19

20

21      8. San Mateo County's mail "policy" violates

22  the Religious Land Use and Institutionalized

23  Persons Act because of how it substantially

24  burdens the ability of the plaintiff Tijae

25  Adolphus McGhee to receive, study, and

26  share religious materials and it is not the

27  least restrictive means of achieving any

28  compelling interest of the County.

FACTS

SMART COMMUNICATIONS & MAILGUARD

9. Smart Communications is a Florida-based company founded in 2009 that markets its services to prisons and jails around the country, emphasizing its ability to help law enforcement monitor phone calls, video visits, and electronic and physical correspondence.

10. This case concerns "SMART COMMUNICATIONS' MAILGUARD" service, which prisons and jails use to eliminate physical mail behind bars. When a prison or jail implements Mail Guard, it redirects physical mail to a facility in Florida run by Smart Communications. There, Smart Communications will open, scan, and upload digital copies of the mail into a proprietary database accessible to correction and law enforcement officers through a searchable dashboard.

11. SMART COMMUNICATIONS will then "destroy the physical mail".

Page 5 of 33.

12. Utilizing the dashboard, corrections officers can review mail and either approve or reject it. If approved, a digital copy of the mail may be accessed by its recipient, typically via tablets or kiosks provided by "SMART COMMUNICATIONS".

13. Many prisons and jails have historically subjected incoming physical mail to an initial review before delivery to its recipient. The use of MailGuard, however, departs from this practice in two important ways.

14. First, MailGuard involves the elimination of physical mail. Some facilities, including those in San Mateo County, exempt privileged "legal mail", but all other physical mail is simply forbidden." As discussed below, the MailGuard service replaces physical mail with scans that have to be read on small tablets or kiosks that are in high demand and are located in public spaces.

15. Second, the use of MailGuard subjects incoming mail and those who send it to surve-

1 illance that is unprecedented in its scope
2 and duration:
3     a. Smart Communications stores the mail
4 sent through MailGuard for a minimum of
5 seven years, subjecting both the senders and
6 recipients of mail to long-term surveillance. In
7 its contrast with San Mateo County, for exam-
8 ple, "Smart Communications agreed that it
9 would store all digitized mail for seven years
10 from the date of the inmate's release from
11 the County Facility." In late 2018, Jon Logan,
12 the founder and CEO of Smart Communications,
13 told a reporter for Mother Jones that, in its
14 first ten years of business, Smart Communic-
15 ations had never deleted any records or
16 any data from its database, adding that
17 Smart Communications has "hundreds of millions
18 of data records stored for investigators at
19 any time.").
20
21     b. Smart Communications keeps the mail it
22 scans in a searchable database. On informat-
23 ion and belief, "Smart Communications allows
24 law enforcement officers to run unlimited
25 keyword searches on the entire corpus of
26 digitized mail or to set keyword flags that
27 will "notify" officers whenever a selected keyword
28 is used in a new piece of incoming mail.

1 Because MailGuard is used on incoming mail, this
2 surveillance implicates not only the incarcerated
3 recipients of mail, but also the family members,
4 friends, religious advisors, and others who sends
5 plaintiff mail.

6

7    C. Lastly, on information and belief, this
8 surveillance encompasses not just mail but a
9 great deal of other information as well." Mail
10 Guard gives prison and jail officials access
11 to sensitive and previously unavailable
12 information about at least some senders
13 of mail, including their phone numbers, physical
14 addresses, IP addresses, email addresses, credit
15 card and banking information, and GPS lo-
16 cations." Smart Communications collects this
17 information through a service that allows the
18 senders of mail to "track postal mail delivery," but
19 which Smart Communications has advertised to
20 prisons and jails as collecting "significant new
21 intelligence into the public sender of the
22 postal mail, giving postal mail a digital fingerprint."

23

24    Example:" On the date of 7-12-2023 Wednes-
25 day, at or about 7:36pm. San Mateo County Sheri-
26 ff's Jail corrections officer K. Nugyen offered
27 to access the incoming message on the message
28 app available on the tablet supplied by "SMART

Page 8 of 33.

1 COMMUNICATIONS", which plaintiff could not access
2 due to no positive credits in the account
3 with Smart Communications" So, corrections officer
4 K. Nugyen sat at the computer terminal and
5 accessed the incoming message from one,
6 "James Anderson" who plaintiff does not know,
7 and explained to plaintiff that the individual
8 was a "freelance reporter from Riverside
9 California who wanted plaintiff's opinion on
10 the Correctional Facilities". (FACT)
11
12
13   16. It is no surprise, then, that Smart
14 Communications markets MailGuard as "an inval-
15 uable investigative/intelligence gathering tool"
16 that provides a "massive increase in investigative
17 intelligence gained on both inmate and public
18 users". The very purpose of the service is to
19 give law enforcement officers", like those in
20 San Mateo County", the ability to obtain and
21 examine unprecedented intelligence about in-
22 carcerated and nonincarcerated correspondents
23 alike. Ruiz v. Morton, 462 F.2d 818 (9th Cir. 1972)
24 (administrative rules and regulations "Must Comport"
25 with the purpose and scope of their progen-
26 itorial statute; They "May Not" extend or
27 outreach statutory authority).
28

Page 9 of 33.

17. California Government Code §11342.2: The standard of review in evaluating the validity of "Department's Regulations" was explained in In re Edwards, supra, 26 Cal. App. 5th at page 1189, 237 Cal. Rptr. 3d 673: ("In order for a regulation/policy to be valid, it "must" be (1) consistent with and not in conflict with the enabling statute and (2) reasonably necessary to effectuate the purpose of the statute. (Gov. Code §11342.2) [citations] Therefore, "The rulemaking authority of the agency/county is circumscribed by the substantive provisions of the law governing the agency/county." [citation.] "The task of the reviewing Court in such a case is to decide whether the agency/county reasonably interpreted [its] legislative mandate... (There is no County/Agency discretion to promulgate a regulation/policy which is inconsistent with the governing statute). Whether the force of administrative construction... final responsibility for the interpretation of the law rests with the Courts... Administrative regulations/policy that alter or amend the statute, or enlarge or impair it's scope are "void".

Page 10 of 33.

18. Just as federal regulations cannot undermine acts of Congress, nor can city or County policies circumscribe State or Federal Statutes." U.S. v. Kirvan, 86 F.3d 309 (2nd Cir. 1996) (federal regulations cannot undermine acts of Congress); U.S. Marolf, 173 F.3d 1213 (9th Cir. 1999) (administrative regulations cannot sanction the violation of Constitutional or statutory rights).

19. Many rights are retained by prisoners, like the plaintiff, and cannot be genuinely disputed, included those guaranteed under the U.S. Constitution and other federal and state rights assured to the people via the application of Constitutional Due Process.

20. Prior to April 2021, anyone wishing to communicate with people incarcerated in San Mateo County's jails could send mail directly to the facility. Corrections officers would inspect the mail for the presence of drugs or other threats to facility security, "often with the assistance of trained drug-sniffing dogs and TruNarc

1  a "Raman spectroscopy" device that scans mail
2  and packages for the presence of narcotics!!
3  Once mail was approved, it was delivered directly
4  to its recipient, who could read (or re-read)
5  the mail at any time and keep it with
6  other personal belongings in their cell.
7
8

9     21. In 2021, "with no opportunity for
10 public comment or feedback, San Mateo
11 County abruptly decided to eliminate phys-
12 ical mail within its facilities. On April 6,
13 2021, the sheriff's office issued a press
14 release stating that, "later that month,
15 it would begin destroying and digitizing
16 incoming mail using Smart Communications'
17 services. After that announcement, the
18 sheriff's office "informed its corrections
19 officers of the upcoming change" and issued
20 a request for proposals relating to
21 "mail destruction" and digitization services).
22 In May 2021, after MailGuard had already
23 been in place for over a month at both
24 Maguire Correctional Facility and Maple Str-
25 eet Correctional Center, San Mateo County
26 announced that it would award the contract
27 to Smart Communications.
28

22. San Mateo County formally entered into an agreement with Smart Communications on September 1, 2021. Pursuant to that agreement, the County agreed to adopt MailGuard and to make digitized mail accessible only on communal tablets and kiosks provided by Smart Communications. The agreement does not require Smart Communications to treat mail it receives confidentially; it does not limit Smart Communications' ability to access or disseminate the information it collects; it does not require Smart Communications to institute specific security practices to minimize the risk of data breeches; it does not prohibit Smart Communications from collecting and monetizing information about the senders and recipients of mail".

23. Although the agreement purports to exclude religious mail", in actual practice the County subjects incoming religious correspondence to the mail policy, requiring it to also be sent to Florida where it is digitized and destroyed".

## Obstruction of Correspondence

24. Title 18 Chapter 83 Postal Services (§ 1691-1738) 18 U.S.C.S § 1702 reads as such: "Whoever" takes any letter, postal card, or package out of any post office or any authorized depository, for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed," with design to obstruct the correspondence, or to pry into business or secrets of another, or opens, secretes, embezzles "or destroys the same", shall be fined under this title or imprisoned not more than five years, or both"! History: Act June 25, 1948, ch 645, §1, 62 Stat. 778; Sept 13, 1994, P.L. 103-322, Title XXXIII, §33 0016(1)(I), 108 Stat. 2147.

25. San Mateo County is under the federal statute with the State of California, which is made applicable to the states via Congress's authority to legis-

1 late under the "Spending Clause" of the
2 U.S. Constitution. This means that if a state
3 receives federal money by virtue of a federal
4 law providing for state programs, the
5 state "must adhere" to federal policy con-
6 cerning those programs. Should a state
7 run afoul of the "Controlling federal law",
8 a state citizen can bring a suit under
9 that federal law directly against the
10 state government in federal court", be-
11 cause in accepting federal money the
12 state effectively waives it's Eleventh
13 Amendment Immunity" with regard to the
14 programs it is supposed to operate with
15 the federal funding in question.
16
17
18    26. San Mateo County's Misconduct has
19 violated, and is still violating (1) A Consti-
20 tutionally Protected Right That Was (2) A
21 Clearly Established Constitutionally Protect-
22 ed Right At The Time Of The Incident
23 Under Review. Marbury v. Madison, 5 U.S. 137 (1803)
24 ANY LAWS, STATUTES, REGULATIONS, OR GOVERN-
25 MENT POLICY IN CONFLICT WITH THE CONSTIT-
26 UTION ARE UNENFORCEABLE. Ruiz v. Morton,
27 462 F. 2d 818 (9th Cir. 1972) (administrative rules
28 and regulations "must comport" with the purpose

1 and scope of their progenitorial statute; they
2 "may not" extend or outreach statutory authority)
3 U.S. v. Mavolf, 173 F.3d 1213 (9th Cir. 1999) (admin-
4 istrative regulations "cannot sanction" the
5 violation of constitutional or statutory rights).
6
7
8    27. San Mateo County's mail policy subjects
9 both senders and recipients of mail to long-
10 term and "suspicionless surveillance, including
11 for reasons unrelated to the safety of
12 the County's jails.
13
14
15    28. Through MailGuard, San Mateo Cou-
16 nty has centralized and long-term access
17 to an "extraordinary new field" of informat-
18 ion about incoming mail and those who send
19 it. Through a program provided by Smart Com-
20 munications, called the "SMART ECOSYSTEM DASH-
21 BOARD", San Mateo County officials can access
22 digital copies of each piece of incoming non-
23 legal mail received since MailGuard was put
24 to use in 2021. The dashboard also provides
25 access to information collected about the
26 senders of mail, including, on information and
27 belief, information gathered through its mail
28 tracking service.

29. Next, San Mateo County permits law enforcement officers from across the jurisdiction — including investigators in the sheriff's office, the district attorney's office, and in other municipalities to search this information at any time, for any reason or no reason at all. San Mateo County does not, for example, require law enforcement officers to seek any sort of approval internally or articulate any individualized suspicion of wrongdoing before conducting searches in the Smart Ecosystem Dashboard. The County's Corrections Manual instructs corrections officers in particular to "read [correspondence] as frequently as deemed necessary to maintain security or monitor a particular problem." On information and belief County officials have used their authority to search through the dashboard freely.

30. San Mateo County has never adequately explained its decision to adopt this mail policy, "nor is there a legitimate government interest in retaining it". In the County's initial press release announcing the adoption of MailGuard, the County said only that it would "make[] some changes to the way people receive mail"

1 to prioritize the safety and security of
2 those in our correctional facilities". Rios
3 v. Lane, 812 F.2d 1032 (7th Cir. 1987) (Sparsely
4 worded rule not otherwise substantiated or
5 explained by other available sources held
6 impermissibly vague where prisoners could
7 not ascertain what conduct the rule
8 prohibited); Connally v. General Construction
9 Co., 269 U.S. 385, 391, — S.Ct. —, — L. Ed. 2d —
10 (1926) (a statute or rule under which
11 a person can be punished for its violation
12 must not "forbid ... or require ... the doing
13 of an act in terms so vague that men
14 of common intelligence must necessarily
15 guess at its meaning and differ as to
16 its application"); Flagner v. Wilkinson,
17 241 F.3d 475 (6th Cir. 2001) (courts should
18 not defer to administrative decision or
19 policy when substantial evidence demon-
20 strates prison officials have exaggerated
21 their response).
22
23
24    31. In response to the criticism of
25 the decision on Facebook, the sheriff's
26 office asserted that "our changes are
27 to help keep everyone safe since there
28 has been some concerns regarding fentany

Page 18 of 33.

1 exposures with the old mail system we were
2 using." (Concerns, but proof unsupported). The
3 County has said virtually nothing else to
4 explain the decision. U.S. v. Morton, 467 U.S.
5 822, 834, 104 S.Ct. 2769, 81 L.Ed. 2d 680 (1984)
6 (where Congress has authorized the promulgation
7 of regulations for implementation of a
8 statute, such regulations are given "le-
9 gislative and hence controlling weight un-
10 less they are arbitrary, capricious, or
11 plainly contrary to the statute."). Due
12 Process Clause bars arbitrary government
13 conduct, regardless of the ultimate
14 fairness of the procedures involved.
15
16
17   32. San Mateo County has never publicly
18 suggested that fentanyl was a significant
19 problem within its facilities, that the
20 presence of fentanyl was significantly
21 increasing, or that any data pointed to
22 mail as a significant source of fentanyl.
23 (Concerns of exposure without substantiated
24 evidence does not relate to legitimate
25 penological interest). Indeed, although
26 the "sheriff's office has not provided infor-
27 mation on fentanyl-related drug incidents"
28 an outside study of fentanyl overdoses

1  around the United States revealed that, be-
2  tween 2013 and March 30, 2021, "there were no
3  publicly reported fentanyl-related overdoses in
4  either of the County jails."
5
6
7      33. San Mateo County and Sheriff's office
8  excuse is vague and unsubstantiated in its
9  inception as well as vague and unsubstanti-
10 ated in their expression. The Medical Nursing
11 Staff Itself issues out 100mg to 300mg shots
12 of suboxone which forms a hard protrusion that
13 spreads after the injection. Those who have
14 received these "suboxone" shots, a sufficient
15 number of those people have became
16 "sick," "nauseated," and vomiting also occured."
17 If there was an overdose in either jail, the
18 overdose would come from the prisoner being
19 issued "Methadone" inside the jail by the
20 medical nursing staff known as nurse practioners.
21
22
23     34. Nor is there evidence that mail is a sig-
24 nificant source of fentanyl or other drugs
25 in San Mateo County's jails. Court records,
26 federal investigations, and public state-
27 ments instead show that the "primary
28 channel through which drugs are introduced

1 into jails and prisons is "staff". For example,
2 the executive director of the Missouri Corre-
3 ctions Officers Association admitted in
4 2022 that staff were the main source
5 of drugs in Missouri jails." Also in 2022,
6 a "New York City Department of Corrections
7 investigator testified in a Federal court
8 that drugs and other contraband can
9 "usually" be traced to jail staff and
10 officers".
11
12
13   35. Also, in a 2019 report on conditions
14 in the Alabama prison system, the U.S.
15 Department of Justice described interviews
16 with multiple officials who confirmed that the
17 staff smuggling was the primary source of
18 drugs, and it recommend screening all staff
19 for drugs in the future".
20
21
22   36. In San Mateo County itself, staff
23 smuggling also appears to be a problem; mul-
24 tiple jail employees have pleaded no contest
25 to charges that they smuggled drugs in
26 to its jails. So as far as mail-related
27 trafficking of drugs, it is a "rare event",
28 and a highly exaggerated response by anyone

Page 21 of 33.

1 employed by the County of San Mateo, or
2 within the San Mateo County's Sheriff's
3 Office.
4
5
6    37. Florida State Prisons, another fine
7 example, less than 2% of the contra-
8 band items confiscated over a 2-year
9 period were traced back to mail, and only
10 0.35% of mail contained contraband.
11
12
13    38. Texas, the rate of mail with
14 suspicious or "uninspectable" substances
15 - which would include drugs as well as
16 stickers or fragrances  was only 0.5%
17 in 2019.
18
19
20    39. There is also very little evidence
21 that mail digitization reduces the preva-
22 lence of drug use  or drug overdoses in
23 jails or prisons.
24
25
26    40. Pennsylvania's statewide adoption
27 of MailGuard, the drug test positivity
28 rate actually "increased". Likewise, after

1 Missouri contracted with a different com-
2 pany to digitize and "destroy incoming
3 mail", the number of average overdoses
4 in the state's jails and prisons increased
5 from 31 to 37 per month.
6
7
8    41. New Mexico, the example hereafter
9 prisons banned physical mail, the drug
10 test positivity rate nearly doubled.
11
12
13    42. So, "Any claims that San Mateo
14 County may make to justify the elim-
15 ination of physical U.S. mail because
16 of health effects on staff who
17 handle drug-laced mail would be
18 similarly unsupported" There is no evid-
19 ence that drug-laced mail poses a seri-
20 ous threat, or security safety to prison
21 staff who inspect it."
22
23
24    43. The New York Times and others
25 have reported, "scientific literature
26 has shown definitively that brief contact
27 with Fentanyl" "even without gloves or
28 other common protective clothing, is insuf

Page 23 of 33.

1  ficient to cause a high, let alone an
2  overdose). And in any event," the digiti-
3  zation and destruction of mail does
4  not actually eliminate the need to handle
5  the mail; it simply shifts the responsibility
6  for doing so to others working at the
7  behest of the County."
8
9
10    44. San Mateo County has not attempt-
11  ed to explain why other," less speech-
12  restrictive" and more "privacy - protective"
13  tools that could limit drug use in its
14  facilities are insufficient.
15
16
17    45. For example, the County had previo-
18  usly used "drug-sniffing dogs" and
19  Raman spectroscopy devices to scan mail for
20  the presence of drugs!! There is a machine
21  in the booking area downstairs of the Maguire
22  Correctional Facility, that is used to scan each
23  individual upon entering the facility, or
24  when there is reason to believe" by the
25  gathered evidence" an inmate is in the
26  possession of drugs. FACTS!
27
28

46. The example in Marin County, in the month of February the 27th, 2023, it was reported in the Mercury News that a "San Quentin State Prison Corrections Officer was given 20 months in federal prison for the smuggling of 25 cell-phones to a prisoner on death row. Keith Christopher, 38, of Pittsburg California was sentenced by U.S. District Judge Susan Illston." Prosecutors asked for a 27-month sentence, arguing that Christopher betrayed his colleagues and the public and said he started accepting bribes to smuggle phones after his probationary period at the prison ended in 2018. He then submitted a letter to the Court, "apologizing for lack of integrity displayed and dishonor to the oath he made as a correctional officer." I understand that "I compromised the "safety and security" of the institution and the public by my actions", he wrote.


47. Also, again in April of 2023, San Jose Police Union. The bombshell Federal drug trafficking charges filed the previous week against the executive director

1 of the San Jose Police Union on how "long-
2 time office manager was able for years to
3 run the alleged "opioid smuggling scheme" ri-
4 ght under the noses of police in America's
5 10th largest city". Joanne Segovia faces
6 drug trafficking charges and 20 years in
7 federal prison for the "decade-long opioid and
8 fentanyl distribution network" that she
9 reportedly ran through her home and the
10 San Jose Police Officers Association Office
11 where she has been the executive direc-
12 tor since 2003.
13
14
15     48. It is like 'Breaking Bad', San Jose
16 Edition", said Raj Jayadev, a police reform
17 activist with Silicon Valley De-Bug. "To
18 have an international drug circle for nearly
19 a decade, right across the street from
20 police — what is the larger ecosystem that
21 would allow that to occur?" The kingpin
22 for these drugs landing in the bodies of
23 young people "came from the same body
24 that was doing the arresting".
25
26
27     49. So, nearly 6,000 Californians died
28 from fentanyl overdose in 2021. (Myself

1  included of those overdoses who was able
2  to be brought back to life February 7th,
3  2021 at San Francisco General Hospital). In-
4  cluding 125 in Santa Clara County. That
5  same year the most recent for which
6  full data is available—Fentanyl was
7  behind an astounding 1 in 5 deaths
8  of California youths between ages
9  of 15 to 24, according to a recent ana-
10 lysis by the Mercury News Organization.
11
12
13      50. So, Rather than serve San Mateo
14  County's penological interest, the County's
15  mail policy harms them. Correspondence
16  plays a crucial role in strengthening commu-
17  nity and family connections, improving
18  post—release outcomes, and promoting
19  better mental health.
20
21
22      51. For instance, studies have found
23  that more frequent family contact, incl-
24  uding through letters, is associated with
25  greater feelings of connectedness;
26  stronger parent—child relationships;
27  improved mental health for incarcerated
28  people; reduced depression and anxiety

1  For children of incarcerated parents; and
2  a higher likelihood of housing stability,
3  income self-sufficiency, and educational
4  or vocational advancement. C.D.C.R and
5  the Federal Bureau of Prisons recognize and
6  encourage the importance of this comm-
7  unication while incarcerated.
8
9
10  52. Studies confirm that letter-writing
11  creates space for communication in which
12  both senders and recipients have time
13  for reflection. Other studies have em-
14  phasized that physical objects are
15  associated with permanence and emo-
16  tional attachment.
17
18
19  53. The County's mail policy deprives
20  plaintiff of these benefits. Limited
21  access to scanned mail does not provide
22  the contemplative space or privacy
23  necessary to further build relationships,
24  or help to advance plaintiff with his
25  religious and educational studies that
26  come from the access to the original
27  physical copies.
28

54. San Mateo County along with the sheriff's office chose to allow and implement a "policy" which they knew or should have knew to be unlawful, Unconstitutional, impedes and infringes on plaintiff's Constitutionally established rights by destroying actual mail of the plaintiff, to which plaintiff did not consent to, or even knew that his mail would be "destroyed" by a private for-profit company "SMART COMMUNICATIONS" in the state of "FLORIDA" close to 5,000 miles away that plaintiff is not a resident of.

55. Plaintiff has never consented to the destruction of mail, and the intrusive unwarranted surveillance of his family for a "County and prison officials over exaggerated response to Fentanyl drug trafficking by mail in San Mateo County Jails.

56. On information and belief, mail is not a significant reliable source of fentanyl or other drugs in the San Mateo County Jails. The mail policy undermines San Mateo County's penological interests for "Admini-

1 istrative regulations","policy" that alter or
2 amend the statute or enlarge or imp-
3 air it's scope are "void". Once again, just
4 as federal regulations cannot undermine
5 or circumscribe acts of Congress, nor can
6 city or County policies circumscribe state
7 or federal statutes, which therefore
8 makes that "policy" unlawful, unconsti-
9 tutional and quite logically unenforcea-
10 ble.
11
12
13        CAUSES OF ACTION
14          COUNT ONE
15    First Amendment to the U.S. Constitution
16   (42 U.S.C. § 1983) For Plaintiff
17      Against All Defendants.
18
19
20    57. Defendant's mail policy, which includes
21 opening, examining, destroying, and digitiz-
22 ing physical mail and sender information for
23 subsequent investigative use, violates the
24 First Amendment because it eliminates an
25 entire medium of communication, because it
26 "chills" the expressive and associational
27 activity of Plaintiff, because it is not
28 rationally related to any legitimate pen-

Page 30 of 33.

1 logical goals, and because it leaves no
2 adequate alternatives to communication
3 via physical mail.
4
5
6    58. In carrying out this policy,
7 Defendants act under color of state
8 law to operate a program that violates
9 the First Amendment.
10
11
12         COUNT TWO
13    Article 1, Section 2 of the California
14    Constitution For Plaintiff
15         Against All Defendants.
16
17
18    59. For the same reasons, Defendants'
19 mail policy violates Article I, Section 2
20 of the California Constitution.
21
22
23         COUNT THREE
24    Religious Land Use and Institutionalized Persons
25    Act (42 U.S.C. § 2000cc et. seq.)
26    For Plaintiff Against All Defendants.
27
28

Page 31 of 33.

1   60. Defendants' mail policy, as applied to
2   Plaintiff Tijne Adolphus McGhee violates the
3   Religious Land Use and Institutionalized Persons
4   Act ("RLUIPA") because of the imposition of
5   a substantial burden on his ability to access,
6   study, and share religious texts and due
7   to it not being the least restrictive means
8   of achieving any compelling government inter-
9   est.
10
11
12   61. RLUIPA does apply to Defendants' cond-
13   uct because Defendants' receive federal
14   funding to operate the San Mateo County
15   Sheriff's Office, which includes its correcti-
16   ons division. Additionally, it is clear Defend-
17   ants' policy affects interstate commerce
18   because it affects U.S. federal mail.
19
20
21   62. Your Honor, this is about the mail and
22   the deceitful approach in the erecting of a
23   "policy" that is arbitrary, capricious and unreas-
24   onable by an overreaching, exaggerated reason
25   and response clearly unsupported by evidence
26   to deprive plaintiff of his clearly established
27   right protected by the U.S. Constitution.
28   The mail on the tablets are not in any way

1  the "original letters", "cards", or pictures
2  plaintiff would have received by way of
3  regular processing of U.S. postal mail. The
4  electronically generated copies are exact-
5  ly what they are "copies", of the original
6  mailed papers that have been "destroyed".
7  Never again to be retrieved in their original
8  state. San Mateo County, and the sheriffs
9  office are "harvesting information elec-
10  tronically" to "spy". See Aaron Gordon, Prison
11  Mail Surveillance Keeps Tabs On Those On The
12  Outside, Too, Vice (Mar. 24, 2021), Https://www.
13  vice.com/en/article/wx8ven/prison-mail-surveillance
14  company-keeps-tabs-on-those-on-the-outside-
15  too. Just like "Artificial Intelligence", we
16  are dealing with "copied material", "not
17  authentic", unlike the originals that
18  plaintiff will not ever be able to take
19  with him upon his release from the custody
20  of San Mateo County's Corrections Division."
21  (A lie does not become truth, wrong does
22  not become right, and evil does not be-
23  come good ; just because it is accepted
24  by a majority).
25
26
27
28

Proof Of Service

On the date of July 24th, 2023, I Tijue Adolphus McGhee, Did File a 42 U.S.C. §1983 Civil Rights "Amended Complaint" with the United States District Court Northern District Of California in Alameda County city of Oakland. Did place with the "Amended Complaint" By A Prisoner Under 42. U.S.C. §1983, this Proof Of Service By Mail.

I, Tijue Adolphus McGhee, do hereby declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California and under the laws of the UNITED STATES OF AMERICA.

x _____

Date: July 24th, 2023.

Page 1 of 1.

Tijue McGhee HS0331
MAGUIRE CORRECTIONAL FAC./S-W-02
300 BRADFORD STREET
REDWOOD CITY, CA. 94063

" LEGAL "
MAIL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF
CALIFORNIA
1301 CLAY STREET, 400 S. TOWER
OAKLAND, CA. 94612-5212
Attn: [COURT CLERK Mr. Busby

LEGAL

MAIL !

7/24/2023

HOUSTON v. LACK (1988)

LEGAL MAIL